# UNITED STATES DISTRICT COURT OF
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVIS EMMERT and JOHN RONAFALVY, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>CLIMATEMASTER, INC.,<br><br>  Defendant. | Civ. A. No. 5:15-cv-00458-R<br><br>CLASS ACTION<br><br>**PLAINTIFFS' RESPONSE TO CLIMATE MASTER, INC.'S MOTION TO DISMISS** |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF FACTUAL ALLEGATIONS ...................................................... 3

III.    ARGUMENT ....................................................................................................... 6

        A.      Legal Standards of Review for Motion to Dismiss ..................................... 6

        B.      Plaintiffs Have Standing to Assert Their Claims
                and Class Allegations Should Not Be Stricken ............................................ 7

                1.      Plaintiffs have Article III standing ................................................... 8

                2.      The class allegations should not be
                        stricken under Rule 23(d)(1)(D) ....................................................... 9

        C.      The Complaint Complies with Fed. R. Civ. P. 8(a)(2)
                thus Defendant's Rule 12(b)(6) Challenge Fails ........................................ 14

IV.     CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. Colo. 2014).................................................................8, 9, 13

*Adamson v. Bowen*,
855 F.2d 668 (10th Cir. 1988) ...................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................7, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................7, 15

*Dollison v. Am. Nat'l Ins. Co.*,
2013 U.S. Dist. LEXIS 67279 (N.D. Ok. May 9, 2013)............................................12

*Edwards v. Zenimax Media, Inc.*,
2012 U.S. Dist. LEXIS 137520 (D. Colo. Sept. 25, 2012).........................................12

*In re Friedman's, Inc. Sec. Litig.*,
385 F. Supp. 2d 1345 (N.D. Ga. 2005) .....................................................................13

*Friedman v. Dollar Thrifty Auto. Group, Inc.*,
2013 U.S. Dist. LEXIS 140691 (D. Colo. Sept. 27, 2013).........................................11

*Gomez v. Kroll Factual Data, Inc.*,
2014 U.S. Dist. LEXIS 73187 (D. Colo. May 28, 2014)............................................11

*Haas v. Pittsburgh Nat'l Bank*,
72 F.R.D. 174, 1976 U.S. Dist. LEXIS 12843 (W.D. Pa. 1976) ................................13

*Harrison v. Leviton Mfg. Co.*,
2006 U.S. Dist. LEXIS 76334 (N.D. Okla. Oct. 19, 2006) ....................................8, 12

*John v. Nat'l Sec. Fire and Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ....................................................................................11

*Klein v. Puryear*,
2012 U.S. Dist. LEXIS 42605 (W.D. Okla. Feb. 29, 2012) .......................................16

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
   640 F.3d 72 (3d Cir. 2011) ........................................................................... 11

*Lewis v. Casey*,
   518 U.S. 343, 395-96, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) .............................. 9

*Lindley v. Life Investors Ins. Co. of Am.*,
   2010 U.S. Dist. LEXIS 22898 (N.D. Okla. Mar. 11, 2010) ........................................ 10

*Marcus v. BMW of North America, LLC*,
   687 F.3d 583 (3d Cir. 2012) ........................................................................... 13

*Miller v. Farmers Ins. Group*,
   2012 U.S. Dist. LEXIS 188026 (W.D. Okla. Mar. 22, 2012) ..................................... 14

*P.V. v. Sch. Dist. of Phila.*,
   2011 U.S. Dist. LEXIS 125370 (E.D. Pa. Oct. 31, 2011) ........................................... 10

*Petrella v. Brownback*,
   697 F.3d 1285 (10th Cir. 2012) ....................................................................... 8

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ....................................................................... 8

*Realmonte v. Reeves*,
   169 F.3d 1280 (10th Cir. 1999) .................................................................. 8, 13

*Silver v. Queen's Hospital*,
   53 F.R.D. 223 (D. Haw. 1971) ....................................................................... 16

*Trunzo v. Citi Mortg.*,
   2014 U.S. Dist. LEXIS 43056 (W.D. Pa. Mar. 31, 2014) ......................................... 10

*Turner v. Oklahoma*,
   *2008 U.S. Dist. LEXIS 66429* (W.D. Okla. Aug. 29, 2008) ...................................... 6

*Walker v. Apex Wind Constr., LLC*,
   2015 U.S. Dist. LEXIS 8460 (W.D. Okla. Jan. 26, 2015) .......................................... 1

*Wilson v. Galyon*,
   2006 U.S. Dist. LEXIS 5697 (W.D. Okla. Jan. 31, 2006) ......................................... 16

*Zabienski v. ONB Bank & Trust*,
   2012 U.S. Dist. LEXIS 116917 (N.D. Okla. Aug. 20, 2012) ....................................... 6

## OTHER AUTHORITIES

1 H. Newberg & A. Conte, Newberg on Class Actions § 2.07, pp. 2-40 to 2-41 (3d ed. 1992) ............................................................................................. 9

7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice & Procedure § 1795 (3d ed. 2011)...................................... 10

Fed. R. Civ. P. 8................................................................................................... 16

Fed. R. Civ. P. 12........................................................................................ 6, 7, 14

Fed. R. Civ. P. 23.................................................................... 2, 8, 9, 10, 13, 14

### PLAINTIFF'S RESPONSE TO CLIMATE MASTER, INC.'S
### MOTION TO DISMISS

Plaintiffs Travis Emmert and John Ronafalvy ("Plaintiffs") submit this Response in Opposition to Defendant Climate Master, Inc.'s ("Motion") ("Defendant" or "Climate Master") (Dkt. No. 14). For the reasons explained fully below, the Motion should be denied.

## I.    INTRODUCTION

Tellingly, Climate Master does not seek to dismiss Plaintiffs' Complaint for failure to state a claim. Indeed, Climate Master has publicly acknowledged that the air conditioning and heat pump systems it manufactures ("HVAC systems") have been plagued by a known manufacturing defect, which causes the thermostatic expansion valves ("TXVs") to gum up and fail within a short time after installation. *See e.g.*, Compl. at ¶¶ 15, 17, 57. Instead, Climate Master makes two boilerplate arguments in its Motion that merely seek to require modifications to the Complaint. Neither has any merit.[1]

First, Climate Master argues that the named Plaintiffs, who are end-users of the HVAC systems, do not have standing to represent contractors, who install and repair the defective HVAC systems. Climate Master, however, mischaracterizes Plaintiffs' claims and the standing inquiry. Plaintiffs seek recourse for persons who have been

_____

[1]    Climate Master's Motion even if granted, does not really seek or warrant dismissal of the Complaint and its claims. Instead, the relief sought if the Motion is granted is very limited (*see* Motion at 1), and Plaintiffs would seek leave to file an amended complaint, for which leave is freely granted. *See, e.g., Walker v. Apex Wind Constr., LLC*, 2015 U.S. Dist. LEXIS 8460 (W.D. Okla. Jan. 26, 2015)

economically damaged by Climate Master's defective HVAC systems.  Those persons include end-users, who purchased the defective HVAC systems and have been forced to bear labor costs and related expenses to repair the defective HVAC systems, as well as contractors who, in many instances, have borne their own labor and materials costs to repair the defective HVAC systems that fail within weeks or months of installation. Thus, whether borne by the end-user or the contractor who installed the system, damages at issue include labor and materials costs.   The named Plaintiffs, Messrs. Ronafalvy and Emmert have suffered and adequately pled these precise kinds of damage.  They both have suffered Article III injury-in-fact, and Climate Master does not seriously contend otherwise.  They, therefore, have standing to sue Climate Master. Questions about whether the Plaintiffs are adequate class representatives and the scope of the class definition are appropriately addressed under Rule 23 as part of Plaintiffs' Motion for Class Certification.   Climate Master's Motion is premature.   *See e.g.,* Motion at 4 ("Plaintiffs' Are Not Adequate Class Representatives…"; "In considering class certification….").[2]

Second, Climate Master's argument that Plaintiffs' Complaint fails to satisfy Rule 8's "short, plain statement" requirement is not persuasive.   As it must, Plaintiffs' Complaint satisfies the strictures of Rule 8(a)(2), by succinctly describing, *inter alia*: (1) the highly-technical nature of the defect at issue; (2) the reasons why Climate Master knew or should have known that its manufacturing processes were deficient; (3)

---

[2] Moreover, as mentioned below, under Rule 23 courts routinely permit named plaintiffs to represent other class members who have been injured in a similar but distinct manner.

Climate Master's grossly inadequate response to its manufacturing defect in the face of widespread TXV failures; and, (4) the basis for Plaintiffs' Class Action allegations. One can imagine that, absent the inclusion of such allegations in the Complaint, Climate Master would instead claim that the allegations were insufficient to state a claim. Moreover, because this is a proposed nationwide class action, Plaintiffs' Complaint also includes counts under Oklahoma law and, in the alternative, Pennsylvania and Minnesota law, which comprise much of the Complaint. Plainly, a 60-page complaint on behalf of a nationwide class of thousands of individuals, who have suffered millions of dollars in damages, involving a highly technical subject matter, that does not unduly include conclusory, argumentative or other extraneous allegations, is hardly out of the norm.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

As alleged in Plaintiffs' Complaint, since at least 2013, Climate Master's HVAC systems have been plagued with a widespread manufacturing defect that has severely impacted consumers and contractors alike, each costing hundreds if not thousands of dollars to repair. Compl. ¶¶1, 11-14, 17-18. Specifically, due to inadequate manufacturing controls, contaminants left in the HVAC systems during the manufacturing process have been reacting with the refrigerant and oil that circulates through the system to create a dark sludge that collects at the TXV, a precision valve at the center of the entire mechanical process. Compl. ¶¶ 11-15. Typically the problem manifests just weeks or months after a brand-new HVAC system is installed. Compl. ¶¶14, 52-53.

As a result of industry-wide changes in the manufacturing of HVAC systems resulting from new federal regulations, Climate Master was aware of the utmost importance of producing equipment that is free from such contamination. Compl. ¶¶41-51. Yet, as early as 2013, complaints were consistently rolling in from the field that, soon after installation, Climate Master's TXVs were becoming coated with a thick sludge that rendered them unable to meter refrigerant, either resulting in complete failure of the system or degraded cooling capabilities. Compl. ¶¶52-54. In 2014, these failures were rampant, and testing pointed the finger at the scroll compressors that Climate Master used in many of its HVAC systems. Compl. ¶56. A chemical rust inhibitor used in manufacturing was left in the compressors and was reacting with the oil and refrigerant to cause the dark sticky substance to form on the TXV. Compl. ¶56.

Despite identifying the problem rooted in its manufacturing process, however, Climate Master continued to sell defective equipment to contractors and consumers. Compl. ¶¶1, 11-13, 55-56. Moreover, even though the problem typically manifests within just weeks or months of installation, Climate Master has continued to sell defective equipment unabated, failed to notify consumers and contractors of the known defect, and has refused to provide full compensation for necessary repairs. Compl. ¶¶11-13. At best, Climate Master has been offering only partial reimbursement of labor costs in limited circumstances, which is insufficient to cover the actual labor involved in replacing a stuck TXV. Compl. ¶¶17-19, 57-58. Moreover, even though some consumers may not have experienced a complete TXV failure (yet), it is likely that, unbeknownst to consumers, most of the impacted Climate Master HVAC systems are

not functioning as efficiently as they would have functioned absent impurities in the manufacturing process. Compl. ¶19.

Recently, Climate Master has been advising contractors whose customers experience a stuck TXV to inject their customers' systems with a chemical additive, called A/C Re-new, to dissolve the sticky substance that is clogging TXVs, rather than replace the TXV or the defective system itself. Compl. ¶¶17, 57. A/C Renew is a chemical additive manufactured by a third party that is marketed as a way to squeeze some extra life out of HVAC systems that is on their last legs, particularly older systems where performance may have diminished over the years. Compl. ¶57. Ordinarily injecting A/C Re-new into a new Climate Master system would void the warranty, yet Climate Master is advising contractors to inject brand new systems with it. Compl. ¶17. Even more disconcerting is that Climate Master is unable to state whether the chemical cocktail created by injecting A/C Re-New will have a negative impact on the lifespan of these brand-new HVAC systems. Compl. ¶¶57-58.

Consumers, like Plaintiffs, have spent thousands of dollars for new Climate Master HVAC systems and within a short period have experienced these system shutdowns due to sticking TXVs. Compl. ¶¶ 12, 26-27. They have incurred out-of-pocket expenses to have their systems tested and "fixed" with an additive that may or may not shorten the lifespan of the system. Compl. ¶¶12, 26-27. Likewise, contractors have not been paid by Climate Master their full labor costs to test and repair new systems crippled by sticking TXVs. Compl. ¶¶11-12, 21. Plaintiffs, therefore, seek to represent a class defined as follows:

All persons and/or entities who purchased Climate Master HVAC systems utilizing 410A refrigerant, POE oil, and Thermal Expansion Valves ("TXV"), and all licensed contractors who have not been fully reimbursed for parts or labor costs for diagnosing and/or servicing Climate Master HVAC systems for sticking TXVs.

Compl. ¶60.   In the alternative, Plaintiffs asserted claims on behalf of a class of consumers and contractors from their respective home states, where Climate Master's defective systems were installed.  Compl. ¶60.

## III.   ARGUMENT

### A.   Legal Standards of Review for Motion to Dismiss

Defendant has moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction based on the asserted lack of standing of the named Plaintiffs to represent contractors, and Rule (12)(b)(6) for failure to state a claim for which relief can be granted based on the supposed failure to comply with Rule 8(a).

Defendant's jurisdictional challenge, as stated in the Motion, is a "facial challenge based solely on the allegations in the Complaint."   Mot. at 3.   "Where a motion to dismiss is based on a facial attack, courts apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6)  motion to dismiss for failure to state a cause of action." *Zabienski v. ONB Bank & Trust*, 2012 U.S. Dist. LEXIS 116917, at *4-5 (N.D. Okla. Aug. 20, 2012) (internal quotations and citations omitted).

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Turner v. Oklahoma,*

2008 U.S. Dist. LEXIS 66429, at *7 (W.D. Okla. Aug. 29, 2008).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Applying these standards here, there is no basis to dismiss Plaintiffs' claims.

**B.      Plaintiffs Have Standing to Assert Their Claims and Class Allegations Should Not Be Stricken.**

Defendant moves for dismissal pursuant to Rule 12(b)(1) by arguing that the Plaintiffs lack standing to represent all of the members of the proposed class and, therefore, the Court does not have subject matter jurisdiction over Plaintiffs' claims. Alternatively, Defendant argues that the class allegations should be stricken pursuant to Rule 23(d)(1)(D).

There is no question that the named Plaintiffs, Messrs. Emmert and Ronafalvy, have suffered Article III injury and have standing to bring claims against Defendant Climate Master.  Climate Master's argument is really a premature opposition to class certification.  This is precisely the type of argument that courts routinely deny at this procedural juncture.

### 1.   <u>**Plaintiffs have Article III standing.**</u>

"The standing inquiry, at the motion to dismiss stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable to the challenged conduct that is likely to be redressed by a favorable judicial decision." *Petrella v. Brownback*, 697 F.3d 1285, 1295 (10th Cir. 2012).   Thus, the "primary focus for any analysis of standing under Article III 'is whether the plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury.'" *Harrison v. Leviton Mfg. Co.*, 2006 U.S. Dist. LEXIS 76334, at *9 (N.D. Okla. Oct. 19, 2006) (*quoting Morgan v. McCotter*, 365 F.3d 882, 888 (10th Cir. 2004)).   In the context of a class action, the standard is the same and focuses on the standing of the representative plaintiff, not the absent members of the proposed class.

The Tenth Circuit in *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, in deciding motion for class certification, held that standing arguments similar to those made by Climate Master here wrongly "conflate the requirements for standing, prospective injunctive relief, and class certification."[3] 765 F.3d 1205, 1213-1214 (10th Cir. Colo. 2014) (citation omitted).   *See also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (explaining that the Court must first determine whether "at least one named class representative has Article III standing," then

---

[3] In *Abercrombie*, the Tenth Circuit also noted "support [for] the notion that class 'standing' does not require individualized proof from class members." *Id.* (*citing Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (noting that Article III standing does "not require that each member of a class submit evidence of personal standing")).

"question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."). As aptly stated by the Tenth Circuit:

> Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions. *Lewis v. Casey*, 518 U.S. 343, 395-96, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (Souter, J., concurring) (alterations in original) (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions § 2.07, pp. 2-40 to 2-41 (3d ed. 1992)).

765 F.3d at 1214.   Thus, the question of whether Plaintiffs are adequate class representatives is not answered on a motion to dismiss, but by application of Rule 23, at the appropriate time, on a full record, subsequent to discovery.

Plaintiffs' allegations plainly demonstrate they have incurred economic injury, both in purchasing defective equipment and in being forced to bear repair costs. Plaintiffs' allegations also demonstrate that they are part of the class(es) they seek to represent of "all persons and/or entities" and "all licensed contractors" who have incurred economic losses resulting from the sticking TXVs in Climate Master's HVAC systems. *See* Compl. ¶ 60.[4]   These allegations satisfy the standard for Article III standing.

## 2. <u>The class allegations should not be stricken under Rule 23(d)(1)(D).</u>

Defendant argues in the alternative that pursuant to Rule 23(d)(1)(D), the court should strike Plaintiffs' class allegations because Plaintiffs are not contractors and,

---

[4] Defendant correctly notes that Plaintiffs seek to represent a national class but, in the alternative, Plaintiffs also seek to represent individual state classes.

according to Defendant, cannot represent all members of the proposed class.[5]

Defendant misapplies Rule 23(d)(1)(D).

It is "*only in the rare few [cases]* where the complaint itself demonstrates that the

requirements for maintaining a class action cannot be met and no amount of discovery

will demonstrate that the class can be maintained" that a motion to strike class

allegations will be granted under Rule 23(d)(1)(D) at the pleadings stage. *Trunzo v.*

*Citi Mortg.*, 2014 U.S. Dist. LEXIS 43056, at *12-13 (W.D. Pa. Mar. 31, 2014)

(internal citation omitted) (emphasis added).  "If the complaint adequately alleges each

required element of Rule 23, courts generally refrain from dismissing the class

allegations and defer a ruling on the issue of class certification until the plaintiff is

given the opportunity to conduct class discovery and the parties have fully briefed the

issue of class certification." *Lindley v. Life Investors Ins. Co. of Am.*, 2010 U.S. Dist.

LEXIS 22898, at *14-15 (N.D. Okla. Mar. 11, 2010) (denying defendant's motion to

dismiss class allegations as premature).  To be clear,

> [even though] a motion to strike class action allegations
> [pursuant to Rule 23(d)(1)(D)] may properly be filed before
> plaintiffs have filed a motion for class certification, . . . [i]f
> the viability of a class depends on factual matters that must be
> developed through discovery, a motion to strike will be
> denied pending the full-blown certification motion.

*P.V. v. Sch. Dist. of Phila.*, 2011 U.S. Dist. LEXIS 125370, at *9 (E.D. Pa. Oct. 31,

2011) (quoting 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:4 (7th ed.

2010)) (emphasis added); *accord* 7B Charles Alan Wright, Arthur R. Miller, Mary Kay

---

[5] Defendant *does not dispute* that Plaintiffs have sufficiently alleged each of the other required element of Rule 23.

Kane, & Richard L. Marcus, Federal Practice & Procedure § 1795 (3d ed. 2011) (describing the close interaction of Rule 23(d)(1)(D) with the class certification decision to suggest that, in general, a court should wait to resolve a motion to strike class allegations until someone moves for class certification). The purpose of Rule 23(d)(1)(D) is not to allow class allegations to be stricken before discovery and before a motion for class certification has been filed but, rather, "***the purpose of the rule is to allow a district court to 'clean up' the pleadings if class certification is denied.***" *Gomez v. Kroll Factual Data, Inc.*, 2014 U.S. Dist. LEXIS 73187, at \*2-3 (D. Colo. May 28, 2014) (citations omitted) (emphasis added) (granting motion to strike class allegations after denying motion for class certification).

Federal courts are uniform in their application of Rule 23(d)(1)(D) at the pleadings stage and will strike class allegations only in the "rare case" where it is obvious on the face of the complaint that the proposed class has no possible chance for certification.[6] Striking class allegations is disfavored because it "requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Friedman v. Dollar Thrifty Auto. Group, Inc.*, 2013 U.S. Dist. LEXIS

---

[6] *See, e.g.*, *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (holding that it is premature for a district court to decide class certification issues prior to discovery unless the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings").

140691, at *7 (D. Colo. Sept. 27, 2013) (internal citations and quotation omitted) (denying motion to strike class allegations because allegations if taken as true support a finding that the class may be certified after the record is developed).

Courts in this circuit have only stricken class allegations pursuant to Rule 23(d)(1)(D) on a motion to dismiss when the plaintiffs lacked Article III standing. *See, e.g., Harrison*, 2006 U.S. Dist. LEXIS 76334 at *3 (dismissing class action complaint because plaintiff did not suffer the injury allegedly suffered by the proposed class). *Cf. Edwards v. Zenimax Media, Inc.*, 2012 U.S. Dist. LEXIS 137520, at *16 (D. Colo. Sept. 25, 2012) (ruling on defendant's Rule 23(d)(1)(D) motion to strike class allegations *after* the motion to dismiss was decided and finding plaintiff failed to define an ascertainable class).   Thus, Defendant relies exclusively on *Dollison v. Am. Nat'l Ins. Co.*, where the court held as a matter of law that the named plaintiff was not injured and, ***because she did not have Article III standing***, both her individual and class claims should be dismissed.  2013 U.S. Dist. LEXIS 67279, at *18, 23-25 (N.D. Ok. May 9, 2013).  *Dollison* is inapposite.

Here, there is no basis to strike Plaintiffs' class allegations on behalf of both end-users and contractors, all of whom suffered similar, reciprocal injury as a result of defendant's defective HVAC systems.  Plaintiffs Emmert and Ronafalvy were denied warranty coverage and paid contractors to diagnose and repair their defective Climate Master HVAC systems.   At the same time, many contractor-Class members have been forced to bear their own labor and materials costs, because Climate Master either

12

refuses to compensate them, or else offers grossly inadequate compensation.[7]  In both cases, the putative class members are being forced to bear labor and materials costs that rightly should be borne by Climate Master.  Plaintiffs' proposed class, therefore, includes end-user consumers, as well as those contractors who bore their own labor and other costs.

Defendant's adequacy attack is more appropriately considered at the class certification stage after a full record is developed and findings of fact can be made to determine, *inter alia*, whether Plaintiffs' claims are typical of the class and they are capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(1).  It should be noted, however, that under Rule 23, courts routinely allow named plaintiffs to represent class members who have suffered similar but distinct injuries.[8]  As the Court held in *Abercrombie & Fitch Co.*, the commonality and

---

[7] Because the defect typically manifests within just weeks of installation of a new system, most contractors who installed the systems are loathe to charge their customers hundreds or thousands of dollars in labor and materials to repair this brand-new equipment that should have been defect-free.  Climate Master has put contractors between Scylla and Charybdis, as they must choose between their short-term financial requirements and potentially serious long-term reputational consequences of charging customers to replace a TXV in equipment that should have been working perfectly but was not due to a manufacturing defect.

[8] Just as a few examples: *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (a named plaintiff that purchases only one type of product can bring claims on behalf of purchasers of the other products if the claims apply across the different product types); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1372 (N.D. Ga. 2005) (holding that plaintiff has standing to bring claims on behalf of both note and stock purchasers because the allegations arise out of the same misstatements and omissions, even though different offerings); *Haas v. Pittsburgh Nat'l Bank,* 72 F.R.D. 174, 180, 1976 U.S. Dist. LEXIS 12843, at *16-17 (W.D. Pa. 1976) (holding that consumer plaintiffs who alleged credit card interest overcharges had standing to bring claims on behalf of commercial users as well).

typicality requirements of Rule 23(a) do not require that every member of the class share a fact situation identical to that of the named plaintiff. 765 F.3d at 1216-1217 (*citing Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999)). And, "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Miller v. Farmers Ins. Group*, 2012 U.S. Dist. LEXIS 188026, at *29-30 (W.D. Okla. Mar. 22, 2012), (rejecting defendants' (insurers) challenge to plaintiff's (insureds) ability to establish the typicality requirement of Rule 23(a)(3) with respect to claims involving insurer defendants from which the named plaintiffs did not purchase insurance and reasoning that "Plaintiff's claims and the class members' claims are based on the same legal theories and arise from the same alleged misconduct of defendants.").

Here, the same defective HVAC systems have caused unnamed class members, including both contractors and end-users, to incur out-of-pocket expenses to fix the sticking TXVs. Plaintiffs have Article III standing, are members of the class(es) that they seek to represent, and have sufficiently alleged each of the required elements of Rule 23(a) and (b). Accordingly, Plaintiffs' class allegations should not be stricken. [9]

### C.  The Complaint Complies with Fed. R. Civ. P. 8(a)(2) thus Defendant's Rule 12(b)(6) Challenge Fails.

Defendant takes the unusual position that because Plaintiffs' Complaint is *too detailed*, it contravenes the requirements of Rule 8(a)(2) to set forth a "short and plain

---

[9] Should the Court decide otherwise, Plaintiffs respectfully request leave to amend their Complaint.

statement" and, therefore, must be dismissed for failure to state a claim.   Rule 8(a)(2) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it*." Bell Atl. v. Twombly*, 550 U.S. at 556 n.3 (2007) (quoting 5 Wright & Miller § 1202, at 94, 95).

Plaintiffs have alleged a defective manufacturing process in the context of highly-complex mechanical systems.  Moreover, Plaintiffs allege that Defendant knew or should have known that its manufacturing processes were deficient in light of changes in technology resulting from federal regulations.   Yet, the factual allegations of the complaint, as detailed as they are, comprise fewer than 29 pages.  The remaining pages are largely comprised of Plaintiffs fifteen counts, pled in the alternative under Oklahoma, Minnesota, and Pennsylvania law.  A total of 60 pages is hardly unusual in the context of a nationwide class action involving millions of dollars in damages, particularly one involving complex mechanical systems such as are at issue here.  Additionally, the inclusion of diagrams in pleadings pertaining to defective products has become standard practice in this area of the law.   By all measures, Plaintiffs' Complaint is appropriately comprehensive to satisfy the pleading standards articulated in *Twombly* and *Iqbal*, *supra*, without belaboring the issues.

Defendant's legal authority fails to support its argument that Complaint violates Rule 8(a)(2) but instead highlights the ineptness of it.  For example, Defendant cites to *Frazier v. Ortiz* in which the Tenth Circuit Court of Appeals affirmed the district court's dismissal without prejudice of a 149-page complaint filed by a *pro se* prisoner,

which was illegible, included irrelevant detail, and "wast[ed] dozens of pages on repetitive information."[10]  2007 U.S. App. LEXIS 257, at *2-5 (10th Cir. Jan. 3, 2007). Plaintiffs' Complaint does not suffer from these inadequacies.

The only non-prisoner case cited by Defendant, *Silver v. Queen's Hospital*, held that the complaint failed to comply with Rule 8(a) because it contained "unnecessary allegations couched in argumentative, inflammatory and conclusory terms" and also "superfluous allegations [that] cast gratuitous aspersions upon persons not named as defendants, including various public officials and judicial officers" who made rulings in another related case.  53 F.R.D. 223, 226 (D. Haw. 1971).  The *Silver* court was further enraged by the plaintiffs' counsel who engaged in interviews with the media just prior to the filing of the complaint for the sole purpose of highlighting some of the more "inflammatory" allegations. *Id*.  The *Silver* court, therefore, stated: "In these circumstances, the deliberate violation by plaintiffs' counsel of Rule 8 in drafting the complaint as described and in aiding and abetting widespread publicity of extraneous allegations therein is utterly inexcusable." *Id*.

---

[10] In this District most of the cases that seek dismissal for noncompliance with Rule 8(a)(2) involve *pro se* prisoner litigants, like *Frazier v. Ortiz*, *supra*. These cases are similar in that the pleadings tend to be of a "confusing nature" and include irrelevant, repetitive, and/or inflammatory allegations.  *See, e.g., Klein v. Puryear,* 2012 U.S. Dist. LEXIS 42605, at *1 (W.D. Okla. Feb. 29, 2012) (holding *pro se* prisoner litigant's 834-page complaint failed to comply with Rule 8(a)(2)); *Wilson v. Galyon*, 2006 U.S. Dist. LEXIS 5697, at *4 (W.D. Okla. Jan. 31, 2006) (dismissing without prejudice the *pro se* litigant's confused and incomplete pleadings under Rule 8(a)).

Plaintiffs' Complaint bears no resemblance to the defective pleadings in *Silver,* or *Frazier*.  Plaintiffs have plainly stated the nature of the defective manufacturing process, Defendant's response to it and the economic harm that Plaintiffs and the members of the proposed class have incurred.  Plaintiffs have casted no aspersions but have appropriately and accurately described the significant impact caused by Defendant's defective HVAC systems.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully that Defendant's Motion be denied in full.

Dated:  June 16, 2015                              **CHIMICLES & TIKELLIS LLP**

By:   */s/   Timothy N. Mathews*
Timothy N. Mathews (admitted *pro hac vice*)
Christina Donato Saler (admitted *pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
tnm@chimicles.com
cds@chimicles.com

*Counsel for Plaintiffs and Proposed Lead Class Counsel*

Matthew J. Sill, OK Bar No. 21547
Katie Griffin, OK Bar No. 30829
**SILL LAW GROUP**
14005 N. Eastern Avenue
Edmond, OK 73013
matt@sill-law.com
Katie@sill-law.com

*Local Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of June, 2015, *Plaintiffs' Response to Climate Master Inc.'s Motion to Dismiss* and *Proposed Order* were filed with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to those parties designated to receive notification by electronic mail.

*/s/   Timothy N. Mathews*
Timothy N. Mathews (admitted *pro hac vice*)

1